Shaw C. J.
delivered the opinion of the Court. The general question is whether the plaintiffs are entitled to recov er, and if so, upon what ground and for what sum.
Upon the question whether the defendants are liable as acceptors, the Court give no opinion. On the one side it is contended, that when a consignee is advised of a provisional *305 consignment, and at the same time of a bill of exchange drawn expressly upon the credit of such consignment, and the bill of lading and the draft are tendered together, if the consignee will accept the consignment at all, he does ipso facto accept the draft, and may be charged in an action as acceptor. On the other hand it is insisted, that when the drawee not only declines accepting the draft, but in terms refuses so to do, and gets possession of the property shipped, not by means of the bills of lading, held by the holder of the draft, but by some other means, it would be pressing the doctrine of constructive acceptance too far, to charge such consignee as acceptor. Such a question may well depend upon a careful discrimination of the circumstances of each particular case ; but here the Court have not found it necessary to give any opinion. The proceeds of the sales of the property, disallowing commission, and guaranty, for which under the circumstances and against these plaintiffs, the defendants had no right to charge, were more than sufficient to pay the draft.[1]
But upon the other ground, the Court are all of opinion that the plaintiffs are entitled to recover.
By the shipment and the form of the bill of lading, Thayer the shipper had a right to direct the disposition of this shipment of flour. By inserting the names of the defendants as consignees, they would derive no property in the flour, or interest or title to it, nor any right to take possession of it, until effect should be given to it, by a delivery to them by the ship per himself, or by some person by him duly authorized. The shipper has the sole authority in the first instance to direct the consignment; and if he fills up the bill of lading with the name of a particular consignee or bearer, with a view to some negotiation of his own, which however he does not accomplish, and does not deliver the bill of lading, the insertion of such name gives the consignee no authority over or interest in it. So where the name is left blank, the property passes by a delivery of the bills of lading by the shipper. Low v. De Wolf, 8 Pick. 101.
Here it is very manifest that the bill of lading was designed *306 to vest the property in the defendants, provisionally, that is, in case their acceptance of the accompanying bill of exchange, otherwise in the bearer, being any person to whom the bill of lading should lawfully come for a good consideration by delivery of the shipper. The defendants by refusing to make themselves the consignees upon the terms offered, as they were well warranted in doing, by the notice which they had given to the shipper, did thereby nevertheless repudiate and reject it altogether. They derived no title or authority under the bill of lading, because the master had no authority from the shipper to deliver his part of the bill of lading to them, and because it is quite apparent from the facts, that they had full notice, from the production of the draft and bills of lading previously offered by the plaintiffs, that the plaintiffs had a claim therein for valuable consideration derived from the shipper, and that the master had no authority to deliver his part of the bill of lading to them, so as to give them either legal title or lawful pos session.
It is equally apparent, that in the event which happened, the refusal of the defendants to receive the consignment upon the terms offered, the plaintiffs became entitled to have possession of the flour as consignees.
We have already stated, that in our view this bill of lading was provisional, that in case the defendants would accept the draft the consignment was to them, otherwise to the bearer. In this case the plaintiffs were such bearers. They had given value for the draft and took the bill of lading as collateral security. It is immaterial whether they had an absolute property or a lien ; either would be quite sufficient to maintain this suit against the defendants, who possessed themselves of the goods without title, and with a knowledge of the plaintiffs’ title.'
Nor is it material to inquire, how far, and under what limitations, a bill of lading is to be taken to be a negotiable instrument. A bill of lading to bearer, or even in blank, delivered by the shipper, for value, would be sufficient to enable the holder to receive and hold the property, against any person except a prior indorsee without notice. Nathan v. Giles, 5 Taunt. 558.
Even a sale or pledge of the property without a formal bill *307 of lading, by the shipper, would operate as a good assignment of the property ; and the delivery of an informal or unindorsed bill of lading, or other documentary evidence of the shipper’s property, would be a good symbolical delivery, so as to vest the property in the plaintiffs.[1] But it is not necessary to place the case upon this ground, as we are all of opinion, that upon the refusal of the defendants to accept the consignment upon the terms offered, the alternative destination to the plaintiffs took effect, and they became entitled to claim as holders of a bill of lading of the goods deliverable to bearer.
As to the claim of the defendants to have a lien upon this property, either for their general balance against Thayer, or against Huntoon & Co. of which Thayer was a member, it seems quite clear that no such lien could exist; and the state of the dealings between the defendants and those parties becomes wholly immaterial, because the goods never came lawfully into the possession of the defendants. The delivery of the property to them, by the master, was wholly without authority, and gave them neither valid title nor lawful possession.
As the defendants have no title, as the sale of the property was a conversion, the plaintiffs have a right to waive the tort and recover the proceeds of the sale.

 See Mendizabal v. Machado, 3 Moore & Scott, 841; S. C. 6 Carr & P 218; Laing v. Barclay, 2 Dowl. & Ryl. 530.

 See Stanton v. Eager, 16 Pick. 467; Rowley v. Bigelow, post, 307